Wall *v.* Blasdel.

# THE STATE OF NEVADA ex rel. S. H. WALL, Relator, *v.* H. G. BLASDEL, Respondent.

RIGHT OF STATE TO SIXTEENTH AND THIRTY-SIXTH SECTIONS.   Under the laws of the United States, the State became entitled to the sixteenth and thirty-sixth sections of the public land (except such as were subject to previous preëmption rights and mineral lands) as fast as they were segregated by surveys and the surveys approved.

STATE LANDS SUBJECT TO SALE.   By the Act of April 2d, 1867, (Statute of 1867, 165) an intention was manifested by the State to sell such public lands as the sixteenth and thirty-sixth sections, vested in it without selection, as well as lands it was authorized to select.

OF WHAT LANDS REGENTS MIGHT FIX PRICE.   Under the Act of April 2d, 1867, (Statutes of 1867, 165) the Board of Regents were authorized to fix the price of the public land in but one instance, and that was when the lands had previously been selected in lieu of sixteenth and thirty-sixth sections.

SIXTEENTH AND THIRTY-SIXTH SECTIONS SUBJECT TO ENTRY AT MINIMUM PRICE. Under the Act of April 2d, 1867, (Statute of 1867, 165) the sixteenth and thirty-sixth sections belonging to the State, which were not applied for by actual settlers within six months after the passage of the Act, became subject to entry at the minimum price, which was $2.50 per acre for land within twenty-five miles of the Pacific Railroads, and $1.25 per acre for other land.

SELECTED LAND ONLY SUBJECT TO BIDS.   Section 6 of the Act of April 2d, 1867, (Statutes of 1867, 165) providing for the sale of public lands to the highest bidder, refers only to such lands as are selected by the State, as provided in Sections 4 and 5 of the Act, and not to sixteenth and thirty-sixth sections, which vest in the State without selection.

PREËMPTION RIGHTS TO SELECTED LAND.   Under Section 6 of the Act of April 2d, 1867, (Statutes of 1867, 165) a settler on public land selected for the State has for six months after selection a preferred right to purchase at the minimum price, notwithstanding the fact that more may have been offered by one not the first occupant.

THE SUPREME COURT CANNOT ENACT A STATUTE.   The Supreme Court may hold a statute or part of a statute null and of no effect, but it cannot repeal it and enact another in its place.

INTERPRETATION OF STATUTES.   A statute cannot be interpreted to mean what it does not express, and what it is evident it was not intended to express.

This was an application to the Supreme Court for a writ of *mandamus* to be directed to the Hon. H. G. Blasdel, requiring him, as Governor of the State, to sign a patent for the sale of certain public land, being the south half and the northeast quarter of the northeast quarter of section sixteen in township fifteen north in Range nineteen east of Monte Diablo meridian.   The relator set forth in

his petition, among other things, that the section was surveyed by the United States Government on or about July 3d, 1865, and that the plat of such survey was filed in the proper land office ; that no person claimed or presented any claim or demanded any right of entry of such section within six months of the survey, or within six months after the passage of the Act of April 2d, 1867, and that no person except himself ever demanded or sought to purchase the portion of the section above mentioned. The petition proceeded to set forth the steps taken by the relator to secure a patent, and the refusal of Governor Blasdel to sign it, substantially as stated in the opinion.

The respondent filed an answer admitting most of the allegations of the petition, and calculated chiefly, if not exclusively, to present for adjudication questions of law arising under the Act of April 2d, 1867.

*Samuel C. Denson,* for Relator.

The only question to be considered is the proper construction of the Act of April 2d, 1867, entitled "An Act to provide for the *selection* and *sale* of lands granted by the United States to the State of Nevada." The title of the Act embraces all the lands granted to the State, without any reservations, and section one makes this intention more manifest by expressly including sixteenth and thirty-sixth sections. The Act provides for the *selection* and *sale* of such lands. The sixteenth and thirty-sixth sections are *absolutely granted* by such designation that no *selection* is to be made, and all that remains to be done is the survey, which *segregates* or ascertains the locality of such lands. Then the Act under consideration cannot be said to provide for the *selection* of such sections, and they being expressly included in the purview of the Act, it must refer to their *sale.*

The first and main object of construction of a statute is to ascertain the intention of the Legislature. (*Brown* v. *Davis,* 1 Nev. 409.)

Section 12 says : "Lands selected prior to the passage of this Act, in lieu of the sixteenth and thirty-sixth sections, shall be sold as the sixteenth and thirty-sixth sections,". etc. If the sixteenth

and thirty-sixth sections are not intended to be sold, then this portion of the law is nugatory, and means nothing. Laws should be so construed that, if possible, every part may stand.

Section 11 provides that lands in the sixteenth and thirty-sixth sections that have been actually occupied and improved may be sold to " any person desiring the same," if not claimed for purchase by the actual occupant within six months after the Act passed or after survey. What reason could there be for selling the lands of defaulting occupants, unless it was intended to sell all the lands of this class or grant? Again: In construing statutes, the Court will look at the evil sought to be remedied or good to be gained, and then at the remedy provided or means employed to accomplish the end. " The reason and object are a clue to the true meaning."

(*Watervleit Turnpike Co.* v. *McKean*, 6 Hill, 616; *People* v. *Insurance Co.*, 15 Johns. 358; *Dresser* v. *Brooks*, 3 Barb. 429; Bac. Abr. tit. Stat. I, 1 Kent's Com. 462.)

The intention of the law to sell the sixteenth and thirty-sixth sections being established, the question next arises: " Does the Act provide a means of carrying that intention into effect?" Clearly it does, and in the following words:

1st. Upon written application of an individual, the State will select and sell land—Sec. 5.

2d. Lands selected by the Register and Board of Regents at their own instance, must be advertised for sealed proposals—Sec. 6.

3d. In certain cases after lands have been advertised, they may be sold by private entry; and Section 8 establishes the entire *modus operandi* of making private purchases or entries.

The mode of sale applies to " all applications to purchase," and includes, in its provisions, all lands subject to private sale. Lands in the sixteenth and thirty-sixth sections are, without advertisement, in the same condition as selected lands after advertisement and no bids offered—the principal reason of advertisement, of selected lands, namely : that the people may know the lands that belong to the State, not applying to sixteenth and thirty-sixth sections which are, by public law, declared to belong to the State.

Private entry or purchase is the most general mode, under the

statute, of disposing of lands, no other mode (save, perhaps, by land warrants, which have never been issued) applying to more than a single case or class, and the conclusion must be, that if the sixteenth and thirty-sixth sections are to be sold, they must, in the absence of any special mode, be disposed of under the general provisions of Section 8.

For the purposes of this proceeding, we will admit that the sixteenth and thirty-sixth sections are *selected,* as soon as authoritatively surveyed. But, selection and sale—not selection alone—are the main objects of the Act of April 9th, 1867. How are they to be sold? Is there a different mode provided in the Act for their sale, from that furnished for the sale of selected lands in satisfaction of other grants, and if yea, where in the Act is it found, in either express language, or reasonable inference or intendment?

Section 6 of the Act provides that the Register is to "prepare a list containing a brief description of the land selected during the previous month in each county, and furnish a copy of such list to the County Surveyor, who shall file the same, and also mark them on the township plat in his office." Are sixteenth and thirty-sixth sections which were surveyed, and thereby selected " during the previous month," to be left out of these lists? The Act does not so provide; and if it did, would provide a foolish thing, unless it somewhere else provided a plain and specific mode, different from that laid down in Sections 6, 7 and 8 for selling them; for sale of the lands of the State and getting the money for them are the grand results aimed at in the Act.

The provisions of the law requiring notices to be furnished by the Register, and posted by the respective County Surveyors, for "sealed proposals for the purchase of any such lands," etc., mean, that sealed proposals shall be advertised for the purchase of any unsettled and unoccupied lands of the State, no matter how selected, subject to sale; and that until so advertised no such land can be sold at private sale.

Should the construction contended for by the relator prevail, land in a sixteenth or thirty-sixth section adjoining and of equal value in all respects as that in an odd section, could not be sold

for more than double the minimum price, perhaps not that; while that of the odd sections might bring from two to ten times as much, being first offered to the highest bidder. Such inequitable and ruinous policy could not have been intended by just and sensible law-makers.

By the Court, BEATTY, C. J.

. This is a petition for a writ of mandamus to issue out of this Court for the purpose of compelling his Excellency H. G. Blasdel, Governor of the State, to sign and issue to relator a patent for a certain piece of land. There appears to be no question as to the character of the land, it being a part of a sixteenth section; no question as to priority of rights, there being no other claimant for the land; but the simple and only question is, has the relator taken the proper steps, or caused the proper proceedings to be had, to enable him to obtain the State's right to this land. The proceeding is an amicable one, his Excellency only hesitating to grant the patent because of a doubt in his mind as to whether those steps have been taken which would authorize him to sign and deliver the patent to the relator.

The relator shows, (and these facts are not denied) that as early as 1865 the land in dispute was surveyed by United States authority, and the locality of Section 16 fixed. That no person has ever occupied the land, and the relator has only hitherto claimed it. On the 22d of November, 1867, relator made written application to the Register to purchase it. That the Register found no objection to the sale of the land, and gave a certificate to applicant in due form as to the application, price of lands, etc. This certificate he took to the State Treasurer, paid to him the price of the land, $2.50 per acre, took a triplicate receipt, and deposited one copy with the Controller of State and another with the Register, who thereupon made out a patent in due form, which the Governor refused to sign.

The question now is: Did the relator do, and cause to be done, all the proper preliminary acts to entitle him to a patent? This brings us to an examination of the Act, approved 2d of April, 1867, entitled "An Act to provide for the selection and sale of

lands granted by the United States to the State of Nevada." The
first sentence of the first section of the Act reads as follows :

"For the purpose of selecting and disposing· of the lands
granted by the United States to the State of Nevada, including
the sixteenth and thirty-sixth sections, and those selected in lieu
thereof, in accordance with the terms and conditions of the several
grants of lands by the United States to the State of Nevada, a
State Land Office is hereby created of which the State Surveyor
General shall be ex officio Register."

As the laws of the United States then stood, the State of Nevada
was entitled to all sixteenth and thirty-sixth sections of the public
lands, (unless, perhaps, those which had been previously occupied by
settlers or preëmptioners and the mineral lands) as fast as they
were segregated. by survey, and the surveys affirmed. The State
also had the right to select certain other lands, and by selection to
acquire a title ; but the sixteenth and thirty-sixth sections vested
immediately after survey in the State without selection. This first
section then clearly shows, when viewed by the light of surround-
ing circumstances, not only an intention to sell selected lands, but
also to sell lands which vested in the State without selection.

Section 8 points· out how applications to purchase the State
lands may be made, and what steps, are to follow such application.
That section is in these words : "All applications to purchase shall
be made in writing, and be signed by the applicant, or his agent,
and shall designate the tracts applied for, the number of acres,
and shall be presented to the Register, who, if there is no valid
objection to the sale of the land, shall give to the applicant a cer-
tificate, stating the name and residence of the applicant, the desig-
nation, the number of acres, and price of the tract ; and on pre-
sentation of such certificate to the Treasurer he shall receive the
purchase money, and receipt for the same in triplicate, one of
which shall be filed with the State Controller ; and on one of such
receipts being filed with the Register, the purchase shall be per-
fected, and the proper entry as to such sale made upon the books
and maps of this office. On the first Monday of each month the
Register shall certify to the Secretary of State an abstract, show-
ing the particulars of all the sales during the previous month.

The title of the State to the lands so sold shall be conveyed to the purchaser, or to his heirs or assigns, by patents, free of charge, in such form as the Board of Regents shall prescribe ; to be prepared by the Register, signed by the Governor, and shall have the great seal of the State affixed by the Secretary of State, and shall be countersigned by the Register, who, with. the Secretary of State, shall keep a record of the patents issued." .

This section, it will be observed, does not prescribe any form of application except so far as it relates to the description of the land. It does not state at what price the offer is to be made, nor for what character of lands. The certificate of the Register is, however, to state the price. From this it would appear that the price of the land is considered fixed by law by some act of some board or tribunal connected with the Land Office, or is to be fixed by the arbitrary will of the Register. We cannot conceive that it was. intended to leave the price to the will of the Register. Therefore we presume the Legislature understood the price as fixed by law, or else that it would be fixed by the Board of Regents provided for in the Constitution of the State, and frequently referred to in this Act. That Board of Regents do not appear to be authorized to fix the price of land in but one instance. That is where the lands have heretofore (that is before the passage of the Act of 2d of April, 1867) been selected in lieu of sixteenth or thirty-sixth sections, and these lands are in possession of occupants. Then we must look to some other part of the law to find the price at which the application to enter or purchase may be made. Section 11 provides substantially that where a sixteenth or thirty-sixth section shall have been vested for more than six months in the State, and more than six months shall have elapsed after the passage of the law, and no application for its purchase is made by an occupant, then the same shall be subject to entry. Section 6 of the Act declares that the minimum price of land within twenty-five miles of the railroad shall not be less than $2.50 per acre. Taking these two sections in connection with Section 8, it appears that the sixteenth and thirty-sixth sections not applied for by actual settlers within the six months prescribed are subject to entry. That the minimum price being fixed and no other, they must be

subject to entry at that price. It also appears that one desiring to enter must apply under the provisions of Section 8. This was certainly done, and we see no reason so far as these three sections are concerned why the relator should not have his patent.

But it is contended that under the provisions of Section 6 a different mode of purchase or entry is provided for. That under that section lands are put up to the highest bidder, and that it was the intention of the Legislature that all lands of the State should be disposed of to the person who would bid highest for them.

Sections 4 and 5 provide for making selections of land in the name of the State under the several Acts of Congress, allowing her to select a certain number of sections for different purposes. Section 6 provides for disposing of these *selected* lands, and reads as follows:

"The Register shall, on the first Monday of each month, prepare a list containing a brief description of the lands selected during the previous month, in each county, and shall furnish a copy of such list to the County Surveyor, who shall file the same, and also mark them on the township plat in his office. The Register shall also furnish to the County Surveyor of the county wherein such lands are situated a sufficient number of notices, stating therein that sealed proposals for the purchase of any such lands will be received by the Register at any time within three months from the date of such notice, and that said proposals will be opened upon the day of the expiration of said three months, at the Register's office, by the Board of Regents, and when there is no opposing application, the person applying shall be allowed to enter the same; and it shall be the duty of such County Surveyor to properly post such notices within his county. Every such proposal shall state the name, residence, and post office address of the applicant; the description according to their designation upon the United States township plats of the tracts applied for; the number of acres, and the price per acre offered, which shall in no case be less than one dollar and a quarter per acre; and when the applicant is the occupant, or in the possession of such lands, the dates when such occupancy or possession commenced shall be stated under oath. An occupant or party in possesion shall have a preferred right to pur-

chase for six months after the selection by the State of the lands occupied or possessed by him, and for the same time shall have the right to purchase one hundred and sixty acres at the minimum price, except it be double minimum land, in which case he shall have the right to purchase the same amount at double minimum price. If the Commissioner of the General Land Office shall decide that the State cannot select lands within the limits of the reservation made for the Pacific Railroad, then the Board of Regents may select one-half the amount of land in satisfaction for the grant to the State, and the price of said land shall not be less than double the minimum price."

Now it appears to us this section only refers to lands *selected* under the preceding sections, for several reasons. First, it requires the Register to make a list of the land selected within the previous month. The terms do not include lands which may have vested in the State without selection. Second, those selected lands have to be marked on the township plats of the County Surveyors and notices posted, giving a list of them. This is all necessary in regard to *selected* lands, otherwise no one could know what lands were selected.

But all persons at all familiar with the land laws of the country know that sixteenth and thirty-sixth sections are State lands, and there is no necessity for any such marking or notices. Besides, there is an almost absolute necessity to withhold these selected lands from entry for some definite period after selection. If that was not done, many frauds would be perpetrated on actual settlers. For this reason they are kept out of reach of entry for three months after notice is given of their selection by the State. During that three months, however, they are offered to the highest bidder, with the proviso in effect that if there is a settler on the land, he shall have the preferred right to buy at $1.25 per acre, or if within twenty-five miles of the railroad, at $2.50 per acre, notwithstanding the fact that more may have been bid for the land by one who was not the first occupant. If there is no occupant on the land, and no bid should be made for the same within three months from the time of notice of selection of these lands, they would probably be subject to entry.

17

This section, it appears to us, has no application to sixteenth and thirty-sixth sections, and these sections are subject to *entry* upon the conditions stated in Section 11, and if subject to entry, we see no way in which entry can be made, except as done by the relator.

It has been claimed that the Act of Congress making some of the latter grants to the State of Nevada, requires those lands to be sold to actual settlers, whilst there is no such restriction as to sixteenth and thirty-sixth sections, and that therefore the method of sale prescribed in Section 6 would be in contravention of the Act of Congress if applied to any of these lands *selected* under these Acts. That for this reason the section should be held to apply only to sixteenth and thirty-sixth sections, and those selected in lieu of sixteenth and thirty-sixth sections. This Court may hold an Act or part of an Act in conflict with a law of Congress null and of no effect. But it cannot repeal such a law and enact another in lieu thereof not subject to the same objections.

If the law, as passed, is valid, it must be enforced. If invalid, it must be rejected. We cannot interpret a law to mean what it does not express, and what it is evident it was not the intention of the Legislature to express. The Legislature clearly meant that Section 6 should apply to one class of lands; we cannot enact that it shall apply to another class.

The writ of mandamus will issue, in accordance with the prayer of relator; and it is so ordered.

JOHNSON, J., did not participate in the above decision.