[No. 784.]

AARON LAYTON, RESPONDENT, v. JAMES FARRELL, APPELLANT.

SIXTEENTH AND THIRTY-SIXTH SECTIONS, ENABLING ACT OF CONGRESS, CONSTRUED.—The seventh section of the enabling act of Congress must be construed as a grant to the state *in præsenti*, in the nature of a float, taking effect upon specific tracts of land as soon as the same are surveyed by the United States, and not before.

IDEM—PRE-EMPTIONERS.—If *bona fide* settlements were made upon the sixteenth and thirty-sixth sections by pre-emptioners prior to the survey of the lands, then the title would not pass to the state, because they were otherwise disposed of, but other lands equivalent thereto were granted to the state in lieu thereof.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

The facts of this case, as found in the court below, are as follows:

The land in dispute is the north-west quarter of section sixteen, in township forty-one, north of range forty-three east, Mount Diablo base and meridian, containing one hundred and sixty acres. It is agricultural land. On the 19th day of June, A. D. 1873, said land was unoccupied; and on the 20th of said month the defendant Farrell took peaceable possession of said land, and remained in peaceable possession thereof until April 6th, A.D. 1875; that after April 6th, 1875, he remained and still remains in possession of said land; that on the 20th of June, 1873, the defendant settled in person upon said land and premises with a view to pre-empt the same under the laws of the United States; that between June 20th, 1873, and September, 1873, the

defendant erected a dwelling-house and made other valuable improvements upon said land; that since September, 1873, he has continuously resided upon and improved the same in person; that during all of said period, to wit, since June 20, 1873, his home has been upon said land, and that during said time he has had, or claimed no other home, and no other land; that on the 20th of June, 1873, the defendant was a lawful pre-emptioner of the public lands of the United States, and ever since has been, and now is, such lawful pre-emptioner; that township forty-one north, of range forty-three east, Mount Diablo base and meridian, including the land in dispute, was surveyed by the United States government in September and October, 1873, and that prior to that time it was unsurveyed; that the plat of said township was approved by the United States surveyor-general for the state of Nevada, January 30, 1874; that said plat was filed for record in the office of the United States land-office at Carson city, Nevada, February 10, 1874; that defendant filed his declaratory statement in the United States land-office at Carson city, Nevada, in Carson land district, wherein said land in controversy is situated, April 1, 1874, according to law in such cases, claiming said land as a pre-emptioner; that in said declaratory statement defendant claimed settlement on said land, June 20, 1873; that on the 25th of September, 1875, the defendant made proof before the register and receiver of said United States land-office to their satisfaction relative to said pre-emption claim, and that said officers decided in favor of defendant's right to purchase said land from the United States government in accordance with his said declaratory statement as a pre-emptioner; that after making such proof as aforesaid, and after the decision of said officers of said land-office, the defendant paid to the United States receiver of said land-office, for said land, the sum of two hundred dollars, at the rate of one dollar and twenty-five cents per acre, which was the purchase-money paid to the government of the United States for said land, and received his receipt therefor; that in July, 1873, one Reuben Layton duly applied at the state land-office at Carson to purchase said land, and on the 6th

of April, 1875, the state of Nevada issued its patent in due form to said Reuben Layton for said land; that on the 19th day of May, A. D. 1875, said Reuben Layton and wife conveyed said land to the plaintiff, Aaron Layton, by deed of conveyance in due form; that the defendant holds possession of, and claims said land and the right of possession of said land as a pre-emptioner under the laws of the United States, and by purchase as aforesaid, and not otherwise.

The court below rendered judgment in favor of the plaintiff for the possession of said land. The defendant appeals.

*O. R. Leonard,* for Appellant.

I. In construing a statute the primary object of the court is to ascertain the intention of the law-makers. To do this, resort is had to the language used, and also to the object intended to be accomplished by the act. If the statute can be construed, reasonably, so as to uphold the intended object of the legislature, courts will so construe it. And when there are two or more laws upon the same subject, they must be construed so as to maintain all, if possible. (3 Scammon's R. 153; Id. 144; 19 Ill. 38; *Cullerton* v. *Mead,* 22 Cal. 95; *McMinn* v. *Bliss,* 31 Id. 122; *People* v. *Broadway Wharf Co.,* 31 Id. 34; *People* v. *Turner,* 39 Id. 370; *Merrill* v. *Gorham,* 6 Id. 41; *Burnham* v. *Hays,* 3 Id. 115; *Ex parte Ellis,* 11 Id. 222.)

II. Grants, if practicable, must be interpreted so as to effect the intention of the grantor. (*Rice* v. *Railroad Co.,* 1 Black, U. S. R. 360.)

III. It has never been the intention of Congress that the legal or equitable title to any specific parcel of land should vest in this state before survey. It is evident that the state accepted the 16th and 36th sections, or lands in lieu thereof, with the same understanding, and with reference to the provisions of section 2275, U. S. Revised Statutes. (*Vide* sec. 4, p. 195, Stat. Nev. 1866; sec. 1, p. 165, Id. 1867; sec. 1, p. 135, Id. 1871; sec. 1, p. 120, Id. 1873.)

The state land register of this state, in his "Instructions" to purchasers of land from the state, says: "No

application to purchase land from the State of Nevada can be received until after the land desired is surveyed by the United States authorities." (See "Instructions and Laws for the purchase of land from the State of Nevada," dated March 5, 1873, issued by Hon. John Day, state land register.)

IV. The legal, or any, title to the premises in controversy in this action, did not vest in the State of Nevada prior to survey; and appellant's pre-emption rights having attached prior thereto, the title never passed to the state, and is now in appellant. (Sec. 2275, U. S. Revenue Statutes; sec. 11, Enabling Act of Nevada; *Courchaine* v. *Bullion M. Co.*, 4 Nev. 369; *Wall* v. *Blasdel*, 4 Id. 246; *Kissell* v. *St. Louis Public Schools*, 18 How., U. S., 19; *Cooper* v. *Roberts*, 18 Id. 179; *Railroad Co.* v. *Smith*, 9 Wall., U. S., 94; *Terry* v. *Megerle*, 24 Cal. 609; *Grogan* v. *Knight*, 27 Id. 515; Copp's Mining Decisions, 115; Zabriskie's Land Law, 61, 2d Subdiv.; Id. 493; *Toland* v. *Mandell*, 38 Cal. 34; *Middleton* v. *Low*, 30 Id. 603.)

V. We also claim that from the general policy of the United States government relative to public lands the legal title to the premises in controversy in this action did not pass to the state prior to the survey thereof, in September and October, 1873; and that at the time of and prior to survey, appellant had acquired all the rights of a lawful pre-emptor therein; that under such circumstances, upon due proof and full payment, the title to the said premises passed from the United States government to the appellant for all the purposes of this action, where it now remains, for it is admitted that appellant's rights are the same as though he now held a patent from the government, and such are the authorities. (4 Nev. 369; 5 Minn. 223; 3 How., U. S., 458; 4 Wall. 217.)

*M. S. Bonnifield and T. W. W. Davies*, for Respondent.

Counsel cite and rely upon *Heydenfeldt* v. *Daney G. & S. M. Co.* (10 Nev. 291), and the argument and authorities there cited by counsel for appellant.

By the Court, HAWLEY, C. J.:

The decision in this case involves a construction of the seventh section of the enabling act. (Stat. 1864–5, 37, sec. 7.)

When does the title vest in the state to the sixteenth and thirty-sixth sections granted by said act? This identical question was presented to the court in the case of *Heydenfeldt* v. *Daney, G. S. & M. Co.* (10 Nev. 290), and all the authorities bearing upon the subject were then carefully examined; but the decision finally turned upon other grounds, and the question was, by a majority of the court, left undecided.

Upon a review of the authorities we have arrived at the conclusion that the enabling act must be construed as a grant to the state *in præsenti,* in the nature of a float, taking effect upon specific tracts of land as soon as the same are surveyed by the United States, and not before. When the enabling act was passed, the land was not surveyed, and until the survey was made the title of the state did not attach to any specific tracts of land. When the survey was made the location of the land became certain, and at that time "the title, which was previously imperfect, acquired precision and became attached to the land." (*Schulenberg* v. *Harriman*, 21 Wall. 60.) If *bona fide* settlements were made upon the sixteenth or thirty-sixth sections by pre-emptioners, prior to the survey of the lands, then the title would not pass to the state, because they were otherwise disposed of, but other lands equivalent thereto were granted to the state in lieu thereof.

There is some conflict in the decisions of the courts upon this subject, but the conclusions we have reached are in accord with the whole current of decisions of the United States land-office (*Keystone Case,* Copp's U. S. Mining Decisions, 109), and are sustained by the following authorities: *Wall* v. *Blasdel,* 4 Nev. 246; *Terry* v. *Megerle,* 24 Cal. 609; *Grogan* v. *Knight,* 27 Id. 515; *Middleton* v. *Low,* 30 Id. 597; *Toland* v. *Mandel,* 38 Id. 31; *Railroad Co. Fremont County,* 9 Wall. 89; and other cases cited in appellant's brief.

It clearly appears from the undisputed and admitted facts contained in the record that appellant is entitled to the land in controversy, unless the legal title passed from the government of the United States to this state at the date of the enabling act.

It is therefore ordered that the judgment of the district court be and the same is hereby reversed, and the court is directed to enter a judgment in favor of appellant.

BEATTY, J., concurring:

The principal question to be determined in this case is, in my opinion, quite distinct from any that was discussed or involved in *Heydenfeldt* v. *The Daney Company.* It is true that both cases involve a construction of the grant of lands to this state contained in the seventh section of the enabling act. But in that case the decision turned not upon the construction of the grant, but upon the effect of subsequent legislation by congress and the legislature of Nevada, while in this case it depends upon the effect of an act of congress passed prior to the enabling act.

The principal questions in *Heydenfeldt* v. *Daney Company* were: First. Did the grant to this state of the sixteenth and thirty-sixth sections in each township embrace or exclude mineral lands? Second. If the grant embraced the mineral lands, had the title of the state been divested by subsequent legislation? The majority of the court abstained from answering the first question, and decided the case by an affirmative answer to the second. My own opinion, as expressed in that case, was, and still is, that the grant contained in section seven of the enabling act took effect upon the admission of Nevada as a state, and that immediately thereupon the title to every sixteenth and thirty-sixth section within the territorial limits vested in the state, except where they had been disposed of by act of congress prior to the enabling act.

As the controversy in this case is between a claimant under the state and a claimant under the United States for a portion of a sixteenth section its decision, so far as I am concerned, must depend upon whether the land had been

disposed of by act of congress prior to the passage of the enabling act. But fortunately this question admits of an easy answer. By the act of February 26, 1859 (Rev. Stat., sec. 2275), it is provided that "where settlements with a view to pre-emption have been made before the survey of the lands in the field, which are found to have been made on sections sixteen or thirty-six, those sections shall be subject to the pre-emption claim of such settler, and if they or either of them have been or shall be reserved or pledged for the use of schools or colleges in the state or territory in which the lands lie, other lands of like quantity are appropriated in lieu of such as may be patented by pre-emptors," etc. The only question of construction affecting this case, which can arise upon the language of this act of congress is as to whether it applies to future settlements with a view to pre-emption, or only to those which had been made prior to its enactment. It seems, however, to be evident from the context that the intention of congress was to protect future settlers as well as those who had theretofore settled upon the reserved lands. As it is admitted that the appellant in this case had brought himself fully within the terms of the law, the only remaining question is whether the law is still operative in this state. Respondent contends that it was repealed by implication upon the passage of the enabling act, and the learned judge of the district court so decided in an able and elaborate written opinion which accompanies the record filed in this court. In this particular, however, I think the learned judge fell into an error. Repeals by implication are not favored, and are never held to have taken place where the two acts can stand together.

In this case I think there is no difficulty in so construing the act of February, 1859, and the enabling act, as to give to each its full force without impairing the force of the other. The grant in the enabling act expressly excepts lands previously disposed of by act of Congress, and appropriates other lands in lieu thereof. The act of 1859 was a prior disposition of all lands of the class described in the grant that might be settled upon before survey. There was,

it is true, no absolute disposition of any particular section, but there was a contingent disposition of every section. The disposition was prior, notwithstanding it depended in particular instances upon a contingency which might happen subsequent to the grant.

The case of *Higgins* v. *Houghton* (25 Cal. 260), which is relied upon by the district judge as sustaining his conclusion that the effect of the passage of the enabling act was to withdraw the sixteenth and thirty-sixth sections from the operation of the pre-emption laws, is not in point for the reason that the grant to California was made prior to the passage of the act of February, 1859, while the grant to this state was made subsequently thereto; and the very object of that act was to protect pre-emption settlers, before survey, from the operation of grants to the states and territories of the public lands.

For these reasons I concur in the judgment and order of the court.