[No. 846.]

## JOHN S. SHOEMAKER ET AL., RESPONDENTS, v. A. J. HATCH ET AL., APPELLANTS.

BOUNDARIES OF LAND—WATER COURSES.—The water-course, and not the meander line by which it is surveyed, is the boundary of the fractional subdivision of land.

IDEM—ISLAND, WHEN PART OF THE LAND.—To determine the question of fact, whether a bar or island is part of the land upon either side of the stream, the relative size and permanence of the channels, the size of the island compared with the size of the stream, and the conformity or divergence of course between the meander line and the main channel, must all be taken into account.

DAMAGES FOR RIGHT OF WAY IN CONSTRUCTING A WATER DITCH.—Under the act of congress of July 26, 1866, the defendant had the right to construct his ditch across the public lands of the United States, and could not be held responsible in damages for the digging of the ditch, to any party who came into possession of said land after the ditch had been completed.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are sufficiently stated in the opinion of the court.

*Boardman & Varian,* for Appellant.

I. The Truckee river is a navigable stream within the meaning of the acts of congress, its status as such is established, so far as the United States is concerned, by the refusal of the government to extend its surveys over it. (Sec. 2395–6.) A recognition of the Truckee as navigable is found in the act of the legislature of the territory of Ne-

vada. (Statutes 1862, 106.) Commerce may be carried on between California and this state by means of this river, by floating logs and timbers. (*The Daniel Ball*, 10 Wall. 563; *The Montello*, 20 Id. 441; *Thompson* v. *Androscroggin Co.*, 54 N. H. 548; *Morgan* v. *King*, 35 N. Y. 459; 31 Mich. 337.)

II. The two channels from the river and the south bank is on the south side of the south channel, and not on the north side of the land claimed by appellants; therefore respondents' patent carries them to the water's edge of the south channel. (*Railroad Co.* v. *Schurmier*, 7 Wall. 280; *Kraut* v. *Crawford*, 18 Iowa, 549; *R. R. Co.* v. *Schurmeir*, 10 Min. 82; *Lammers* v. *Nissin*, 4 Neb. 252.)

III. No title or right to the lands granted to the state of Nevada passed or vested until selection was made by the state. There might be a grant of quantity, but certainly the title attached to no specific tract until the state, under its power, made selection. Under the act of congress (Rev. Stat. 2339) appellant built his ditch and appropriated the water to useful and beneficial purposes. The right of way was expressly granted and confined to him. All subsequent purchasers deriving title from the United States, took subject to his agreement. (*Cen. P. R. R. Co.* v. *Dyer*, 1 Sawyer, 646; *Hobart* v. *Ford*, 6 Nev. 86; *Broder* v. *Natoma W. & M. Co.*, 50 Cal. 623.)

*Thos. E. Hayden*, for Respondents.

I. Upon the purchase of the land on the tenth day of July, 1871, the title related back to July 24, 1866, and became a grant *in præsenti* of that date. (*Layton* v. *Farrell*, 11 Nev. 455; *Heydenfeldt* v. *Daney G. & S. M. Co.*, 10 Nev. 290.)

II. The case of the *R. R. Co.* v. *Schurmier*, 7 Wall. 272, is in fact and law conclusive in favor of respondents in this action.

By the Court, BEATTY, J.:

This cause was tried in the district court without a jury, and the findings and judgment were for the plaintiffs. The motion of the defendant, Hatch, for a new trial was over-

ruled, and he has appealed from that order and the judgment. The statement of the case, which was settled by agreement of the attorneys, and purports to contain all the evidence, certainly fails to justify the decision of the court. Instead of referring particularly to the several findings of the district judge that are unsupported by the evidence, it will be sufficient to make a brief' statement of the facts proved. For this purpose the findings will be followed, except where they are opposed to the evidence.

It appears that the Truckee river flows through section 12 of township 19 north of range 19 east, Mount Diablo base and meridian, in a direction a little north of east. In the north-west quarter of section 12 the river divides into two permanent, well-defined channels, which reunite in the north-east quarter, forming an island containing about ten acres. The northern channel is straight, and carries more of the water of the river at all seasons than the southern channel, which makes a considerable deflection, first to the south and then back to the north. More or less water flows in the southern channel at all stages of the river, except in the season of extreme low water, when, in ordinary years, it ceases to flow (although it stands) in the channel. In the year 1864 or 1865 a survey of this section was made by the United States surveyor for Nevada. In making the survey the sectional and subdivisional lines were not extended across either channel of the river. Fractional subdivisions were laid off bounding or abutting upon the south side of the south channel and upon the north side of the north channel, both of which were defined by meander lines. The island seems not to have been surveyed; but whether or not it was delineated on the official plat does not appear, as neither the plat nor the field notes were put in evidence. In December, 1871, the defendant Hatch procured a survey to be made, under our state law, of all the land lying between the meander lines of the United States survey for some distance above and below the island, and under that survey claims the right of possession of the island and of the strip of land along the south bank of the river between the water and the meander line.

In July, 1871, Haydon, for himself and his co-plaintiff, applied to the state register, in accordance with the provisions of "An act to provide for the selection and sale of lands granted by the United States to the state of Nevada" (Stats. 1871, p. 135), to purchase three fractional subdivisions of this section 12, containing about seventy-one acres; and at the time of making his application deposited the full amount of the purchase-money. For some reason the selection of the lands by the state agents was greatly delayed, and it was not until January, 1875, that a patent from the state was finally issued. The land so purchased is bounded on the north by the Truckee river, for a distance of something more than half a mile, and at its eastern end lies opposite the western end of the island.

Pending Haydon's application to purchase, and before the land applied for had been selected by the state, and necessarily before any approval of such selection, the defendant Hatch relying, as he says, upon the grant of the right of way in the act of congress of July 26, 1866 (14 Statutes at Large, p. 253), had commenced and completed a ditch by which he diverted a large quantity of water from the Truckee river and conducted it upon his own land for the purpose of irrigation and to supply a tannery which he was carrying on. This ditch follows the south bank of the Truckee river and extends along the front of the land purchased by Haydon for more than half a mile. There is no evidence that at the time the ditch was constructed any one was in possession of the land, and Hatch swears that no one opposed or protested against its construction.

Such being the case; this action was commenced in October, 1876, to recover possession of the land between the meander line of the United States survey on the south side of the Truckee and the middle thread of the main channel (the north channel) of the river, including about two acres of the west end of the island. There were counts also for damages for detention of the land and for the digging and maintenance of the ditch. The judgment of the court was for restitution of the demanded premises, including the west end of the island, and for damages in the sum of five hun-

dred dollars, assessed as the value of the right of way for the ditch, which was by the judgment confirmed to the defendant Hatch.

The two assignments of error principally relied upon are: 1. That the court erred in holding that the northern channel of the Truckee river instead of the southern channel was the northern boundary of the land of plaintiffs; and, 2. That it was error to allow any damages for the right of way of the ditch.

As regards the first point, it is claimed by the respondents, and not denied by the appellant, that low-water mark and not the meander line is the boundary of their land; and it is not denied that in this action the plaintiffs were entitled to recover from the defendant the land between the meander line and low-water mark on the river. (See Railroad Company v. Schurmeir, 7 Wal. 286–7, and other cases cited in the briefs.) The question is, what is the river? Respondents claim that the northern or main channel alone can be considered as the river channel, and that what has been called an island, although surrounded by running water at all ordinary stages of the river, is not an island, but is part of their land lying between the meander line of the survey and low-water mark. To sustain this position they cite and rely upon the case just referred to, which in many respects was extremely like this case. There are, however, essential points of difference. The river there in question was the Mississippi, and the island, so to call it, was at the time of the survey a mere sand-bar about ninety feet wide and one hundred and sixty feet long, separated from the main land by a channel or slough twenty-eight feet wide. The slough in that case was absolutely as large as the south channel of the Truckee in this case, but relatively to the stream, the main Mississippi river, it was extremely insignificant; the island was a mere sand-bar, entirely submerged in high water and of insignificant size in low water. No notice was taken of it in making the survey, the meander line being run on the land side of the slough. The purchaser of the adjoining fraction claimed the bar; it was filled in so as to raise it above high

water, used as a landing for steamboats before and after it was filled in, and covered with valuable improvements. After all this a railroad company procured a new survey to be made by a United States surveyor and undertook to claim the land (then increased to nearly three acres in size and immensely enhanced in value) under a Congressional grant of certain odd numbered sections. On the facts of the case it was decided that the bar was included in the first survey as a part of the main land. But here the facts are different. The two branches of the Truckee river are both permanent, well defined channels. The northern is the shorter, and necessarily has more fall, and in low water carries all the running water, but there is no disparity in the size or appearance of the channels, and the land between is not an insignificant little sand bar, overflowed in high water and liable to be cut away by a change of the current. It is truly an island, and, compared with the size of the stream, a large island. A glance at the map shows to a demonstration that the intention of the surveyor was to meander the southern channel, and not to include the land north of it in the subdivisions purchased by Haydon. To allow the claim of respondents would give them only about two acres of the west end of the island as a part of a fractional subdivision containing ten or fifteen acres, but by the same rule the owner of the next fractional subdivision on the east, which contains not more than five or six acres, would take as parcel of his purchase about eight acres of the island. This shows to what absurd consequences it would lead if the case of *The Railroad Company* v. *Schurmeir* were held to establish the principle that where a river has two channels, one of which ceases to flow at low water, land surveyed as bounding upon that channel will take all the land between it and low-water mark on the main channel. As before remarked, that case was decided on its own peculiar facts, and no general principle applicable to this case can be extracted from it, except that the water-course, and not the meander line by which it is surveyed, is the boundary of the fractional subdivisions. To determine whether a bar or island is part of the land on either side of a stream, account must be taken

in every case of a variety of circumstances, such as the relative size and permanence of the channels, the size of the island compared with the size of the stream, and the conformity or divergence of course between the meander line and the main channel. It is a question of fact to be determined from all the surrounding circumstances, whether the land between the meander line and the shore of the lake or water-course is included in the survey. (See *Lammers* v. *Nissen*, 4 Neb. 251, and *Granger* v. *Swart*, 1 Woodworth's C. C. Rep. 90.) In this case we conclude from the facts proved and found by the court that the island in question was not included in the land surveyed on the south side of the south channel.

It is unnecessary to decide the question incidentally discussed by counsel as to whether the Truckee is a navigable stream within the meaning of the laws regulating the public surveys. It is conceded to be a highway for the floatage of wood and timber, and has been treated by the officers of the government as a navigable stream. Their action upon the matter is conclusive, so far as this case is concerned, and the district court held correctly that low-water mark, and not the middle thread of the stream, was the proper boundary of the lands of plaintiffs. Its only error as to this point consisted in treating the northern channel as the only navigable channel of the river, and the island as a part of the main land on the south of the stream.

With reference to the second assignment above mentioned, the respondents contend, as was held by the district court, that the state, by relation, was the owner of the land purchased by Haydon from and after the date of his application to purchase and his deposit of the purchase-money —that is to say, from and after July 10, 1871—and consequently that the appellant is bound to pay them for the right of way of his ditch, constructed in 1873. In support of this position they cite *Layton* v. *Farrell*, 11 Nev. 455; *Heydenfeldt* v. *Daney Co.*, 11 Nev. 290; *Courchaine* v. *Bullion M. Co.*, 4 Nev. 374, 377, and *Barnes* v. *Sabron*, 10 Nev. 240. We think none of those cases are in point. What was said in *Layton* v. *Farrell* and *Heydenfeldt* v. *Daney Co.*,

as to the time the grant of the sixteenth and thirty-sixth sections took effect and vested the title in the state, has no application to grants of quantity of lands to be selected. As to such grants, the doctrine is that when the selections of the state are approved the title of the state relates back to the date of selection and no further. (*Paterson* v. *Taturn*, 3 Sawyer C. C. R. 166.) There is nothing in *Barnes* v. *Sabron* inconsistent with this; nothing, in fact, that remotely implies anything to the contrary. In *Courchaine* v. *Bullion Co.*, it was held for reasons that were perfectly valid that the right of the pre-emptioner related back to the date of the filing of his declaratory statement, but those reasons are totally inapplicable to this case. There is no doubt that up to the date of the selection of these lands by the state they remained a part of the public lands of the United States, and the appellant had a perfect right to construct his ditch across them under the act of congress of July 26, 1866 (see 14 Stats. at Large, 253), subject only to the liability therein imposed of paying for any damages to the possession of a settler on the lands. There is no evidence that the lands were possessed by any one other than the appellant when the ditch was dug, and it is expressly admitted that they were not selected by the state until after the ditch had been completed. As this view entirely disposes of respondents' claim for damages on account of the ditch, it is not necessary to determine whether they are a proper subject of litigation in this action.

The judgment and order appealed from are reversed, and the cause remanded.