## VAN VALKENBURG v. McCLOUD.

THE public lands of this State were, previous to their survey by the General Government, subject to location by the holders of school warrants issued under the Act of May 3d, 1852.

*Doll* v. *Meador* (16 Cal. 296) affirmed upon the points that the Act of Congress of September, 1841, donating lands for internal improvements, is as to the States to be subsequently created a grant *in presenti*, and vests in each of them immediately upon its admission 500,000 acres of the Government lands within its boundaries, not reserved from sale, with the right to select the same in such manner as its Legislature may direct; that such selection may be made before the land is surveyed by the Government, but must be subject to change if subsequently, upon the survey being made, it be found to want conformity with the lines of such survey.

C. being the holder of two school warrants issued under the State Act of May 3d, 1852, located with them, in November of that year, three hundred and twenty acres of public land, of which no survey had at that time been made by the General Government, took possession of the same and occupied it until 1857, when he conveyed the premises with the warrants to M., and he subsequently to the defendant, who took and has since retained the possession. The original selection was not strictly in conformity with the lines of the subse-

quently made survey of the United States, but after such survey the defend-
ant caused its boundaries to be changed so as to conform with the lines of
the sectional divisions established by the survey, and deposited his warrants in
the United States Land Office of the district.   The plaintiff claims under a
location of other school warrants made by him upon the same land after the
survey by the United States.   In ejectment by plaintiff to recover the land of
defendant :   *Held,* that the location by C. before the government survey was
valid, and that the title of defendant should prevail.

APPEAL from the Fifth Judicial District.

This is an action of ejectment to recover three hundred and
twenty acres of land in San Joaquin County.   Both parties claim
under the State of California, under locations made with warrants
issued under the Act of 1852, commonly called School Land War-
rants.   From the findings of the Court it appears, that in 1852
one James L. Carnduff entered upon the premises, which were
vacant unsurveyed land of the United States, and in October of
the same year, purchased from the State two school land war-
rants, which he caused to be located on the premises by the County
Surveyor—the location being duly recorded in the Clerk's office on
the eighteenth of December, 1852.

Carnduff built a house upon the premises, where he resided,
cultivating the land, exercising control and ownership over it, until
the tenth of June, 1857, when he conveyed the land, by a quit-
claim deed, and assigned the warrants to Alonzo McCloud, who, in
September of the same year, conveyed the land and assigned the
warrants to the defendant, who entered upon the land and has con-
tinued in possession up to the present time.   The survey and loca-
tion made by the County Surveyor in 1852 embraced nearly the
whole of the land in controversy, and the possession of defendant
and his grantors was coextensive with that location.   In 1858, after
the land had been surveyed by the United States, defendant caused
the lines of the original location to be so changed as to conform
with the United States survey, and afterwards deposited his war-
rants in the United States Land Office of the district.   The posses-
sion of the defendant and those under whom he claims has been
uninterrupted since October, 1852—a period of nearly ten years.

The plaintiff claims under a location with school land warrants

made in the United States Land Office at Benicia, in June, 1856, shortly after the lands were surveyed by the United States Government. He had at the time actual notice of the claim, location, and possession of defendant's grantor. Plaintiff has never been in possession of the land, and bases his right to recover upon a supposed title acquired by his location in the United States Land Office.

The defendant had judgment in the Court below, and plaintiff appeals. A full abstract of the laws of Congress and of this State bearing upon the questions involved will be found in the report of *Doll* v. *Meador* (16 Cal. 296).

*O. M. Brown,* for Appellant.

The third section of the Act of the Legislature of this State, passed May 3d, 1852, declares: "That no location shall be made unless it be made in conformity with the law of Congress."

The Act of September 4th, 1841, grants to the State of California 500,000 acres, and allows the selections to be made, as the Legislature may direct, (that is the manner) "at any time after the lands of the United States in such State shall have been surveyed according to existing laws." (Act of 1841, sec. 8.) A selection, to be in accordance with the law of Congress, must be after the survey and return of the plats, otherwise, it would seem that a selection might be made without any regard to the law of Congress.

Section three of the circular of the General Land Office is as follows: "The selections must be based upon the official township plats of the public surveys, which are required to be approved by the Surveyor-General, and on file in the local land office for thirty days prior to the time of filing the selection."

If, then, the law and instructions mean anything, the Carnduff location in 1852, by survey of the County Surveyor, and recording in the Clerk's office, on this unsurveyed land, amounted to nothing, being in direct contravention of the plain letter and evident spirit of the law.

If the United States direct the manner of selection, then the direction must be followed. If not followed, no approval will be made or patent issued to the State. If the State or her agents

act in utter disregard of such law and instructions, and yet claim land assumed to be located, as that by Carnduff, the succeeding acts of approval by the United States, through her agents, are totally unnecessary and useless.   Why call upon the United States to approve a selection and subsequently issue a patent·to land, when the State claims her own selection to be final and conclusive of her rights ?   Why ask for approval ?   Why seek a patent? Yet not one selection has ever been made without the condition annexed that it be approved by the United States.

The United States have never approved the selection made by Carnduff in 1852 ; in fact, the Government had no knowledge of any such selection.   In 1855 the land was surveyed, and the plats returned to the land office in the district.   About January, 1856, Van Valkenburg made a selection of the land in controversy, and surrendering his warrants to the Register of the Land Office, received a certificate of location from the United States Register. Van Valkenburg's warrants were surrendered at the time of his location to be canceled ; whereas the Carnduff warrants were in circulation until within a short time previous to the trial of this case, and might with the greatest facility have been sold to and passed through a dozen hands, and also have been relocated on other and different land.   It results, then :

1st. That Carnduff's location was invalid.

2d. That Van Valkenburg's was made according to law, and is valid.

3d. That McCloud's subsequent relocation in 1858 (that is, his changing the lines of his location so as to conform to the lines of the subsequently made survey of the United States) was too late.

4th. That in order to have secured a valid location, and thereby have prevented the location by Van Valkenburg, the relocation by Carnduff should have been made and approved in the United States Land Office within thirty days after the filing of the plats of survey therein.

*D. S. Terry,* for Respondent.

The appellant relies solely on the point, that no location of

school warrants, issued under the Act of 1852, could be made upon unsurveyed lands. This question has been already before the Court, and was, after full argument, settled in the case of *Doll* v. *Meador*, (16 Cal. 295) in which the Court held, that the Act of the Legislature authorizing the location of warrants on unsurveyed lands did not conflict with the law of Congress, passed in 1841, donating lands to several States. That the effect of the language of the Act of 1841 was to confer upon the State of California upon her admission a present vested interest in 500,000 acres of land, " with a right to select out of any public lands of the United States, except such as were or might be reserved from sale by any law of Congress or the proclamation of the President."

The Act of Congress imposes no other restriction upon the right of selection, except that not less than three hundred and twenty acres shall be taken in one location, and the lines shall be made to conform to the surveys to be made by the United States.

The selection made by respondent's grantor was in strict accordance with the law of California; the location was made by the County Surveyor; was duly recorded in the proper office; and, after the land had been surveyed by the United States, its boundaries were changed, and made to conform with such survey. The warrants have been filed in the United States Land Office of the district; and under the Act of April, 1859, to provide for the issuance of patents to lands located with State school land warrants, respondent is now entitled to recover from the State a patent for the lands. He has a full and complete equitable title, having complied with all the requirements of the law, and need only apply to the proper officer for the patent, which will vest in him the perfect legal title.

Upon his own showing, the appellant has neither a legal nor equitable title to the land in controversy. His argument is based upon the assumption that the legal title to the land is in the United States. If this be so, he cannot recover, and the judgment must be affirmed. To recover in this action, appellant must have had either prior possession or legal title; he does not pretend to have had either. But if an equitable title was sufficient, he has shown no equity. He sought to purchase from the State a tract of land,

which had already been sold to another, of which fact he had actual notice, according to the findings of the Court, as well as constructive notice by the records of the county.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

In *Doll* v. *Meador* (16 Cal. 296) we had occasion to consider the effect of the eighth section of the Act of Congress of September, 1841, by which 500,000 acres of land were donated to several States, designated by name in its first section, and the same quantity to each new State which should be thereafter admitted into the Union. The language of the section with reference to the States designated differs materially from its language with reference to new States which might subsequently be created. As to the old States, the words are inoperative to pass the fee from the General Government. It was so held by the Supreme Court of the United States in *Foley* v. *Harrison* (15 How. 447). "The words of the Act of 1841," said the Court, " are that ' there shall be granted to each State,' not that there is hereby granted. The words import that a grant shall be made in future." The very terms, the absence of which was thus considered as excluding a construction giving to the act the operation of a present grant to the old States, are used when new States are referred to. The language as to the new States is, " there shall be and *hereby is granted*" to each of them, upon its admission into the Union, the quantity designated. This language imports a present, not a future grant, and it operates to vest the specific quantity in each new State immediately upon its admission into the Union. California, therefore, upon her admission acquired a present and vested interest in the 500,000 acres, with a right to select the same, in such manner as her Legislature might direct, out of any of the public lands of the United States, except such as were or might be reserved from sale by any law of Congress or the proclamation of the President—the selections to be made in parcels conformably to sectional divisions and subdivisions prescribed by the general system of surveys of the United States, and of not less than three hundred and twenty acres each. With reference to the old States, the act provides that the selections may be made at any

time *after* the public lands in those States respectively have been surveyed according to existing laws. But with reference to the new States, the *time* at which the selections may be made is not designated. The concluding words of the grant to them—providing that the land is " to be selected and located as aforesaid "—refer (as we held in *Doll* v. *Meador*) only to the manner and form of the selection, and the quantity which the several parcels must embrace. As we said in that case : " Conformity in the locations with the sectional divisions and subdivisions is required to preserve intact the general system of surveys adopted by the Federal Government, and to prevent the inconvenience which would ensue from any departure therefrom. When, therefore, any location is made by the State previous to the survey of the United States, it must be subject to change if subsequently, upon the survey being made, it be found to want conformity with the lines of such survey. With this qualification, and the further qualification of a possible reservation by a law of Congress or a proclamation of the President previous to the survey, which may require further change or the entire removal of the location, we do not perceive, either in the language of the act or the object to be secured, any limitation upon the right of the State to proceed at once to take possession and dispose of the quantity to which she is entitled by the grant. It would hardly be pretended that she would be deprived of the bounty of the General Government if no surveys were ever directed by its authority, or that the enjoyment of the estate vested in her would be suspended indefinitely by reason of its inaction in the matter. The legislation of the State has proceeded upon a construction of the Act of Congress similar to that which we have given, and under it interests of great magnitude have grown up, any disturbance of which would lead to consequences greatly to be regretted."

At the time the opinion was rendered from which this citation is taken (October, 1860) the selections made under the authority of the State from unsurveyed lands exceeded 150,000 acres. Since then the number must be greatly increased ; and so long as the restrictions upon the action of the State, in making the selections provided by the Act of Congress, are secured, it is difficult to perceive the force of the objections urged against a selection from

unsurveyed lands.  In *Doll* v. *Meador* we held that objections, such as are made in the present case, were untenable, and we reaffirm the decision in that respect.

This conclusion disposes of the appeal.  The selection of Carnduff was made by the location of school warrants in December, 1852. These warrants were in fact powers of attorney from the State, authorizing the holder to select for her three hundred and twenty acres of the 500,000 donated by the United States.  Carnduff was in the possession of the premises at the time, and he erected a dwelling-house thereon, in which he resided, cultivating the land, and exercising ownership over it, until June, 1857, when he conveyed the premises, together with the warrants, to Alonzo McCloud, and the latter, in September of the same year, conveyed them to the defendant, who immediately entered upon the premises, and has continued in their possession ever since.  The original selection was not strictly in conformity with the lines of the subsequently made survey of the United States, but after such survey the defendant caused it to be changed so as to conform with the lines of the sectional divisions and subdivisions established by the survey, and deposited his warrants in the United States Land Office of the district.  The plaintiff claims under a location of school warrants made in the land office of Benicia, after the survey of the United States, and he relies for a recovery upon the alleged invalidity of the location of Carnduff in 1852, because made on unsurveyed land.  This ground of reliance, for the reasons we have stated, fails him in the case.

Judgment affirmed.