# F. B. HIGGINS *v.* J. F. HOUGHTON, Surveyor–General of the State of California.

Mineral Lands.—Mineral lands are not excepted from the operation of the grant of the sixteenth and thirty-sixth sections in each township, made to California for school purposes by the Act of Congress of March 3, 1853.

Sixteenth and Thirty-Sixth Sections.—By the Act of Congress granting to California the sixteenth and thirty-sixth sections in each township, the State became the owner of said sections, with the right reserved in the General Government of locating the same; and as fast as townships are surveyed and sectionized the State becomes the owner of said sections absolutely, not only as to quantity but as to position also.

Same.—The title of the State to said sections does not depend in any manner upon the action or non-action of the officers of the General Government, in approving of selections or sales of the same made by the State.

Patents for Sixteenth and Thirty-Sixth Sections.—The fact that sections six-

Higgins v. Houghton.

teen and thirty-six contain mines of the precious metals does not prevent the State from selling the same and issuing patents therefor to the purchaser. The State may, however, by the passage of laws to that effect, prohibit the sale of such lands or the issuance of patents for the same.

CERTIFICATES OF PURCHASE OF SCHOOL LANDS.—Persons who hold certificates of purchase from the State for the sixteenth or thirty-sixth sections, or portions thereof, hold the land as the State held it before the certificate was issued, subject to the right of miners to enter upon and work it for mining purposes.

PATENTS FOR SCHOOL LANDS.—Query: Does the patentee of the State, for any part of the sixteenth or thirty-sixth sections, hold the same subject to the right of miners to enter upon and work the same for mining purposes?

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*J. G. McCullough, Attorney-General,* for Appellant.

Upon both these points—that this being mineral land the State cannot sell, and that having no approval of the selection by the Secretary of the Interior the State cannot give any title—the Court is referred to Lester's Land Laws, p. 643; *Summers* v. *Dickinson,* 9 Cal. 554; *Doll* v. *Meador,* 16 Cal. 296; *Kyle* v. *Tubbs,* 23 Cal. 431.

*A. S. Higgins,* for Respondent.

By the Court, SHAFTER, J.

The complaint alleges, substantially, that the United States, by virtue of an Act of Congress, approved March 3, 1853, granted to the State of California the sixteenth and thirty-sixth sections in every township for the benefit of public schools therein; and that all and singular the conditions precedent required by the Act of the Legislature of this State, passed April 27, 1863, and entitled "An Act to provide for the sale of certain lands belonging to this State," having been fulfilled by the action of the proper State officer, and by a performance on the part of the plaintiff of all the requirements of said Act to be complied with by him, he, the said plaintiff has become and now is entitled to a patent from the

State of California of the north half of Section Sixteen, in Township Number Thirteen north, Range Seven east, Mount Diablo base and meridian, containing three hundred and twenty acres of land; and that it has become and is the duty of the defendant, as Register *ex officio* of the State Land Office, to prepare the patent aforesaid and to certify the same to the Governor for his signature; which duty the defendant neglects and refuses to perform, though specially requested so to do on the 24th of December, 1863. The complaint concludes with a prayer for a mandamus.

The answer of the defendant denies that the lands in question were ever granted to the State by the United States, and the reason assigned is that they are mineral lands; and it is further alleged as a reason why the patent should not issue, that "the plaintiff has not procured the approval of the Secretary of the Interior or the proper officer of the United States Government of his said location and selection."

It is further stated in the answer, that a written protest has been filed in the office of the defendant, signed by many persons, claiming said lands as mineral lands; and the answer further alleges that they are mineral lands in fact.

The Court below found that all the allegations of the complaint were true; that the answer stated no defense as a matter of law, and adjudged that the alternative mandamus first issued be made peremptory.

1. We shall in the first place consider whether the title to the lands in question, assuming them to be mineral lands, passed to the State by virtue of the grant contained in the Act of Congress of March 3, 1853.

The grant occurs in the sixth section of the Act referred to, and is as follows: "That all public lands in the State of California, whether surveyed or unsurveyed, with the exception of sections sixteen and thirty-six, which shall be and hereby are granted to the State for the purposes of schools in each township, and with the exception of lands appropriated under the authority of this Act or reserved by competent authority; and excepting, also, the lands claimed under any foreign grant

or title, and the mineral lands, shall be subject to the preemption laws of the 4th of September, 1841."

The language of the grant is too exact and luminous to require or admit of any resort to construction.  There is no statement of any condition, exception, reservation or limitation; and in our judgment the grant vested in the State a quantity of land equal to one thousand two hundred and eighty acres, multiplied by the number of townships into which the public lands in California were capable of being divided, the moment the Act received the signature of the President. Mineral lands are excepted from the operation of the preemption laws, but they are not withdrawn by the Act from the operation of the grant.

Further, there is no reason to believe that the failure of the Government to reserve the mineral lands was the result of inadvertence, for in the grant of seventy-two sections for the use of a seminary of learning, and in the grant of ten sections for the purpose of erecting public buildings, both of which grants are contained in the Act of March 3, 1853, the mineral lands are exempted from the operation of the grants respectively by express proviso.

But the question now under discussion cannot be regarded as an open one.   In the case of *Doll* v. *Meador*, 16 Cal. 296, it was held that California, upon her admission into the Union, acquired, under the eighth section of the Act of Congress of September 4, 1841, entitled " An Act to appropriate the proceeds of the sales of public lands," a vested and present interest in five hundred thousand acres of land, to be selected out of any public lands of the United States within her limits, except such as were expressly excepted in the grant.   This decision was affirmed in *Van Valkenburg* v. *McCloud*, 21 Cal. 330, and is, furthermore, well sustained by the decision in *Foley* v. *Harrison*, 15 How. 447.

It appears from the pleadings in the case at bar that Township Number Thirteen was surveyed and sectionized by the Surveyor-General of the United States prior to the 20th

day of March, 1861, and, as we understand, subsequent to the grant.

2. As to the objection that the respondent has not procured the acceptance of his selection by the proper officers of the United States Government.

The appellant, assuming that there has been no such acceptance in fact, draws from it this conclusion : "And therefore the State cánnot grant a title until she procures certified lists of the approval of selections (including respondent's) by the Secretary of the Interior."

The reasoning goes altogether upon the hypothesis that the States's title to Sections Sixteen and Thirty-Six in Township Number Thirteen, is inchoate, and that it would therefore be improper to issue a patent.

Whether the title of the State is perfect or imperfect, depends upon the legal effect of the grant contained in the Act of Congress of March 3, 1853, coupled with the subsequent survey and sectionizing of Township Number Thirteen.

Admitting that the title of the State was inchoate, in a certain sense, at the date of the grant ; that is to say, that it did not determine, with then present precision, the exact localities upon which it was to attach finally, (*Leisseur* v. *Price*, 12 How. 77,) still, that is certain which may be rendered certain.

We consider that in the grant to California of March 3d, 1853, the power of locating the quantity granted—one thousand two hundred and eighty acres in effect, in two parcels in every township—was reserved to the Government, and as fast as townships thereafter were surveyed and sectionized, that the State became the owner of the sixteenth and thirty-sixth sections absolutely, not only as to quantity, but as to position also.

Township Number Thirteen was surveyed and properly subdivided subsequent to the grant and prior to May 20th, 1861 ; and since the date of that occurrence the State, by the effect of the grant and by the law of the event, has been and is now the absolute and several owner of the sixteenth and thirtysixth sections of that township, as against the Government.

If there is any legislation by Congress, prior to the grant, which would interfere with the conclusion, as the objection in effect supposes, it has not been brought to our notice; and if there has been any legislation since the grant that conflicts with the conclusion, it must be null and void unless, indeed, it has been acceded to by the grantee. But we are not advised by the brief filed for the appellant that any such hostile legislation has been attempted.

3. But it does not follow necessarily that the State, because it is the owner of the sixteenth section in question, is bound to patent the north half of it to the respondent, or to anybody else.

The State, as owner of the sixteenth and thirty-sixth sections of every township within its limits, in the clear exercise of the *jus disponendi*, first entered the market in search of purchasers in 1858; and in a series of Acts found in the session laws of that year, the State dictated or prescribed the terms upon which it would patent those sections, in whole or in part, as well as other public lands, to individuals. In 1859–'60–'61, there was further legislation upon the general subject; and in 1863 the whole of the previous legislation was revised, and to a great extent supplanted by an Act found in the published statutes of that year at page five hundred and ninety-one.

By one of the provisions of this Act any citizen who shall have complied with all the terms and conditions set forth therein in relation to the particular land which he wishes to purchase, shall be entitled to a patent therefor.

As previously stated, it is alleged in the complaint that all the requirements of the Act, as connected with his claim to the north half of Section Sixteen of Township Number Thirteen, have been complied with by the respondent and the concurrent action of the proper public functionaries. The answer denies the averment in one particular only. The denial is as follows: "Defendant avers that plaintiff has not at any time procured the approval of the Secretary of the Interior or of the proper

33

officer of the United States Government to plaintiff's location or selection."

We have already passed upon the question whether the title of the State to the sixteenth and thirty-sixth sections was by the terms of the grant of March 3, 1853, made to depend in any manner upon the action or non-action of the Secretary of the Interior, and the question now presented is, first, whether by the Act of the Legislature of California passed in 1863 the approval of the Secretary of the Interior of the plaintiff's selection of the north half of Section Sixteen, Township Number Thirteen, is made a condition precedent to the plaintiff's right to a patent therefor from the State.

On this point it is sufficient to say, that in the brief of counsel no reference is made to any such provision in the Act of 1863, or in any of the Acts that preceded it. We have diligently examined the whole series of Acts for ourselves, and can find no traces of any such provision.

But the averment in the answer is in the alternative : " Nor has the plaintiff procured the approval of the proper officer of the Government to said selection or location."

The Act of 1863 (page 594, section 8) is as follows : " Whenever the amount of three hundred and twenty or more acres has been applied for under any one grant, he (the State Locating Agent) shall in behalf of the State make application to the Register of the United States Land Office for the district, for such lands, in part satisfaction of the grant under which they are located, and obtain his acceptance of the selections, which acceptance, together with the corresponding certificates of location according to the form prescribed by the Surveyor-General, he shall forward with the proper affidavits to the office of the Surveyor-General for approval, and when approved and returned to him, he shall record the approval and forward the approved certificate of location to the applicant."

Assuming that the approval of the United States Register, spoken of in this section, is a condition upon which the right to a patent is made to depend, still the issue taken by the

Higgins *v.* Houghton.

answer upon the question of fact, was determined against the appellant by the Court. There is no statement of the evidence, nor was there any motion made for new trial. The appeal is from the judgment alone.

There is a stipulation in the case that the parties mutually waive " all observance of form and regularity in time, pleadings and orders," still we are limited by the stipulation to " the questions of law presented by the case," and *they* are limited to questions of error arising upon the judgment roll.

4. As to the protest filed in the office of the appellant.

The protest states that the parties to it are citizens " dwelling" on the north half of Section Sixteen, Township Number Thirteen; that a large number of copper and gold and silver ledges were discovered and located in February, 1863, on the same, and a mining district formed embracing said tract of land, and that over fifty thousand dollars worth of work has been done on said ledges; and if said tract of land should be patented to Higgins, property of the value of more than one hundred thousand dollars will be taken from the present owners.

It is not stated that the signers of the protest have any interest in the land, ledges or mining improvements, or that they or any of them will be subjected to any loss should the patent issue. On the face of the protest the parties to it have no relations to the land except as " dwellers" upon it at the point of time when the protest was signed—December 10th, 1863. Nor does it appear from the protest or otherwise, that down to the date of the respondent's certificate of purchase—November 16th, 1863—there were any improvements upon the land not put there by him, nor that any one had, anterior to that date, any valid claim, or even preferred an invalid one, to the land as such. Still, we consider the protesters as competent parties under the Act of 1863, to contest the plaintiff's right to a patent. (*Tyler* v. *Houghton*, 25 Cal. 26.)

Assuming, then, that all the averments and recitals set forth in the protest are true, the question is presented,

whether, on the ground of any or all of them, or on the ground of any other fact which the case discloses, the plaintiff is barred of a patent.

If barred, it cannot be on the ground that a pre-emption right to the land is or may be outstanding in some one claiming under the laws of the United States; for by the grant of the sixteenth and thirty-sixth sections to the State in full property, they were effectually withdrawn from the operation of the Acts relating to pre-emptions; and further, if they had never been so granted, no one, by virtue of those Acts, could have ever acquired any title to or interest in them if they are mineral lands, as both the protest and answer allege them to be.

Neither can it be said that the plaintiff's right fails on the ground of *any* claim to the land, as such, superior to his own, for the case shows no such claim either real or pretended.

It results, then, that if a patent is not due to the plaintiff it must be on the ground that the mining claims taken up in February, 1863, on the lines of the ledges named in the protest, would pass to the plaintiff by force of the patent, and that, the ledges having been thus reduced to private ownership, mining claims could not thereafter be located upon them under the rules and regulations of miners.

If this were all true, still the State has both the right and the power to do as it chooses with its own. If the State owns mineral lands, its right to sell and convey them cannot be disputed. By so doing it might prejudice its own interests, and even violate its faith pledged to those who may have taken up and worked mining claims on mineral lands belonging to it, by its implied license; but as a question of power, the matter admits of but one solution.

The apprehension, however, that a patent to the plaintiff of the north half of the section in question would interfere with the mining claims and improvements now upon it, or that it would prevent the taking up and working of like claims hereafter, may be wholly groundless—a point, however, which we do not intend to decide.

The Act of 1863, section seventeen, is as follows : " Where a certificate of purchase has been issued by the Register, the same shall be deemed *prima facie* evidence of legal title to the land for which the certificate of purchase issued; *provided,* such certificates of purchase ` shall not be so construed as to affect the working of mineral lands for mining purposes."

Three things at least are demonstrated by this provision : First, that the State by the Act of 1863 assumed that it was the owner of mineral lands, and that as such owner it had the right to sell and convey them; Second, that it was the purpose of the Act to put these lands upon the market for sale upon the terms and under the methods prescribed in the Act for the sale of the public lands at large; Third, that it was, however, the intention of the Act that the parties by whom such mineral lands should be purchased, and to whom they should be certified, should hold them under the certificate as the State held them before the certificate was issued—subject to be entered upon and worked for mining purposes.

Should a patent then be issued to the plaintiff of the north half of section sixteen, he might, perhaps, hold the patent, notwithstanding the absoluteness of its terms, subject to the rule of construction provided for in the Act under which he purchased, and under which his title paper issued. True, by the mere words of the statute, the rule of construction referred to is applied to the certificate of purchase alone; but the point may at least be made, that the Legislature intended that the patent, as a title paper, should be affected by the rule of ' construction to which the document that precedes it in the order of events, is expressly subjected. If it should be held that the main purpose of section seventeen was to conserve the policy of the State in the matter of mines and mining as settled at the beginning of its political history, then section seventeen should undoubtedly be so construed that that result may be secured.

We have, in this opinion, passed upon all the questions raised and discussed by counsel—though to a disposition of the case a decision of one point only was essential—and we

have done so for the reason that a decision of all the points made in argument is a matter of public interest, and, as we gather from the brief filed for the Surveyor-General, is also a matter of urgent concern in his office.

Judgment affirmed.