[No. 6,385.—Department Two, and in Bank on rehearing.]

## G. L. WEDEKIND v. WILLIAM CRAIG.

SCHOOL LANDS—MINERAL LANDS—CONSTRUCTION OF STATUTE.—Under the Act of Congress of March 3rd, 1853, "to provide for the survey of the public land in California," etc., the 16th and 36th sections, though mineral land, were granted to the State.

ID.—ID.—ID.—LIEU LAND.—Under the 7th section of the act referred to, the 16th and 36th sections are reserved from the grant to the State, when any settlement, by the erection of a dwelling-house or the cultivation of any portion of the land, has been made upon such sections prior to the survey of the same, and the State is allowed to select other land in lieu of such sections so settled upon.

ID.—ID.—ID.—MINERAL LAND.—PRE-EMPTION.—The settlement referred to in said section is not limited to land open to pre-emption, but extends alike to mineral land.

APPEAL from a judgment for defendant, and from an order denying a motion for a new trial, in the Fourteenth District Court for the County of Placer. REARDAN, J.

*J. P. Dameron,* and *Rhodes & Barstow,* for Appellant.

*C. A. Tuttle,* and *J. M. Fulweiler,* for Respondent.

THORNTON, J.:

On the 2nd of April, 1878, the plaintiff commenced this action against the defendants to recover the possession of a tract of land situate in the county of Placer, described as the south-east quarter of the north-west quarter of section 36, in township 14 north, range 10 east, of the Mount Diablo base and meridian. Judgment was rendered for defendants. Plaintiff moved for a

new trial, which was denied. The plaintiff prosecutes this appeal from the judgment, and order denying his motion for a new trial.

The plaintiff claimed title under a patent of the State of California, dated 23rd of December, 1876; the defendants, under mining locations made in 1852, which have been occupied ever since, and under a settlement make in 1853, and continued from that date. The Court below found the facts as follows:

1. The plaintiff, on the 3rd day of August, 1874, applied to the Surveyor-General of the State of California to purchase the demanded premises under the act of the Legislature of this State regulating the sale of mineral lands, approved March 28th, 1874, and his application was approved by the Surveyor-General on the 11th day of October, 1875, and that said State issued a patent to him on the 23rd day of December, 1876. This was plaintiff's title.

2. The demanded premises are in the local mining district called Forest Hill Mining District, and are and have been mineral lands, containing gold in gravel placer mining land, and are and have been more valuable for mining than for agriculture.

3. In June, 1852, said premises were located as mining claims, in accordance with the local mining regulations and customs, by citizens of the United States, and have since been held and worked for gold as mining claims by citizens of the United States, and the defendants are such citizens, and have owned, possessed, and worked the same more than ten years last past, and derive their title from the first locators.

4. More than $30,000 has been expended in running tunnels into and developing said claims, and a large amount of gold has been taken therefrom.

5. In the year 1871, the demanded premises and township in which they are contained were sectionized by the United States in the field, and the plat of survey was filed in the local land office at Sacramento, approved by the Surveyor-General of the United States for California on the 11th day of November 1871. That plat of survey showed that the land was returned as mineral land.

6. The defendant Craig, in 1853, settled upon the demanded

premises, erected a dwelling-house thereon, and inclosed about four acres of the same, and moved into said dwelling-house, and has since continued to live upon, occupy, and cultivate the same, with his family.

The land in controversy is mineral. The claim of the plaintiff is based upon the Act of Congress of March 3rd, 1853, passed "to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes," and upon a purchase by him from the State of the land sued for under an act of its Legislature, regulating the sale of mineral lands, approved March 28th, 1874.

It is urged, on behalf of appellant, that this land was granted to the State by the Act of Congress of the 3rd of March, 1853. Reference is made to the sixth section of that act.

It is contended by counsel for defendant, that, as the land is mineral land, it is not embraced in the grant made by the sixth section of the Act of 1853.

This question was before the Supreme Court of this State in *Higgins* v. *Houghton*, 25 Cal. 254. It was held in that case that the 16th and 36th sections, though mineral land, passed under this grant—the full title vesting in the State as soon as the township is surveyed and sectionized.

But it appears from the findings of the Court in this action, that in 1852 the premises sued for were located as mining claims, in accordance with the local mining regulations and customs, by citizens of the United States, and have been since held and worked for gold as mining claims by citizens of the United States; that the defendants are such citizens, and have owned, possessed and worked the same more than ten years last past, and derive their title from the first locators; and further, that the defendant Craig, in 1853, settled upon the demanded premises, erected a dwelling-house thereon, and inclosed about four acres of the same, and moved into the dwelling-house, and has since continued to live upon, occupy, and cultivate the same, with his family.

Counsel for defendants contend that the facts found as above stated, by virtue of the provisions of the 7th section of the Act of Congress of 1853, prevent the grant to the State in the preceding section from taking effect. This section (the 7th) provides,

" that where any settlement, by the erection of a dwelling-house, *or* the cultivation of any portion of the land, shall be made upon the 16th and 36th sections, before the same shall be surveyed, or where such sections may be reserved for public uses, or taken by private claims, other land shall be selected by the proper authorities of the State in lieu thereof, agreeably to the provisions of the Act of Congress approved on the 20th of May, 1826, entitled, an act to appropriate lands for the support of schools in certain townships, and fractional townships, not before provided for, and which shall be subject to approval by the Secretary of the Interior. And no person shall make a settlement or location upon any tract or parcel of land selected for a military post, or within one mile of such post, or on any other lands reserved by competent authority; nor shall any person obtain the benefits of this act by a settlement or location on mineral lands."

It clearly appears from this section, that the 16th and 36th sections, when any settlement " by the erection of a dwelling-house, or the cultivation of any portion of the land," has been made upon such sections, prior to the survey of the same, are reserved from the grant to the State, and the State is allowed to select other land in lieu of such sections so settled upon.

It is found that such settlement was made in 1853, on a portion of the 36th section sought to be recovered in this action, and has existed ever since. (§ 6th, finding.) The township in which the 36th section sued for is, was not surveyed until 1871. Under such circumstances, the title never passed to the State, and the patent issued to the plaintiff is invalid.

It is urged by the plaintiff, that the settlement referred to in the section above quoted is that made by a pre-emption claimant, and that it only relates to lands subject to pre-emption, and that, inasmuch as the land in dispute was mineral lands, not subject to pre-emption (as declared in the 6th section), the settlement did not have the effect to prevent the grant to the State from taking effect. We cannot concur in the soundness of this view, for the reason that the settlement as defined in the 7th section is different from the settlement required of a pre-emptioner. The settlement of the latter must be by inhabiting and improving the same, and by erecting a dwelling-house thereon (see Pre-emption Act of September 4th, 1841, § 10) ; whereas the settlement

mentioned in the 7th section of the Act of 1853 is by the erection of a dwelling-house, *or* by the cultivation of a portion of the land. (See opinion of Secretary of the Interior in *Keystone Mining Co. et al.* v. *The State of California*, Copp's U. S. Mining Decisions, pp. 109, 120.)

Nor, in our opinion, is the soundness of the conclusion here reached affected by the last clause in the 7th section of the Act of 1853, which is in these words: "Nor shall any person obtain the benefits of this act by a settlement or location on mineral lands." The meaning of this is, that no person shall acquire a title to mineral lands, under the provisions of the act, by a settlement or location on such lands. Still, in our judgment, a settlement of the character above stated prevents the title from passing to the State, under the provisions of the 7th section.

It follows from the foregoing, that the judgment and order appealed from must be affirmed, and it is so ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.

On rehearing in Bank, the Court rendered the following opinion: .

By the Court:

The conclusion reached by Department Two in this cause is in accord with the judgment of the Supreme Court of the United States, rendered at its present term in the case of the *Ivanhoe Mining Company* v. *The Keystone Consolidated Mining Company*. (Morrison's Transcript of Decisions of the Supreme Court of U. S. 129.) The opinion of the Department will therefore stand as the opinion of the Court in Bank.