MURPHY et al. v. KIRWAN, Surveyor General, et al.

(Circuit Court, D. Minnesota, Fifth Division. July 5, 1900.)

1. PUBLIC LANDS—MISTAKE IN SURVEY—JURISDICTION OF LAND DEPARTMENT.
   The land department of the United States has no power to correct er- rors in a survey of public lands after such lands have been sold, by ref- erence to such survey, to purchasers in good faith; the remedy of the government, if a mistake has been made to its injury, being by a suit in the courts.

2. SAME.
   Where the United States has caused a township of public land, contain- ing a navigable lake, to be surveyed, and a plat of the same made, show- ing the meander line of the lake, and the fractional subdivisions of land bordering and having riparian rights thereon, and has sold all the lands in the township in accordance with such plat, the land department has no jurisdiction or authority, on a claim that the meander line as shown on the plat is inaccurate, and is in fact at some distance from the lake, to survey and sell the lands lying between such line and the lake, as against bona fide owners of fractional lots, who purchased the same on account of their riparian rights, and especially where no boundaries were marked on the ground by the surveyor, so that the location of the land could only be determined by purchasers by reference to the lake shore, as the only natural boundary given.

In Equity. Suit for injunction.

M. H. Stanford, for plaintiffs.
E. C. Stringer and R. G. Evans, for defendant Kirwan.
Albee Smith, for defendant Croswell.

LOCHREN, District Judge. This is a bill in equity, wherein the complainants ask for a decree restraining and perpetually enjoining the defendants from making a survey of certain lands claimed by the

complainants and described in the bill, surrounding Cedar Island Lake, in township 57 N., of range 17 W. of the fourth P. M., in the county of St. Louis, Minn.; such survey having been ordered by the land department of the United States. The defendant Kirwan is the United States surveyor general for Minnesota; and the defendant Croswell is a deputy surveyor, with whom a contract has been made, by order of the commissioner of the general land office, to make the survey. Upon the filing of the bill, and after due notice and hearing, a temporary injunction was issued, as prayed for in the bill, and the order allowing the same was afterwards affirmed by the circuit court of appeals of this circuit. Kirwan v. Murphy, 28 C. C. A. 348, 83 Fed. 275.

Upon final hearing the following facts appear: (1) On or about April 26, 1876, a contract for the survey of all lands in township 57 N., of range 17 W., in St. Louis county, Minn., was made by the government of the United States with one Henry S. Howe, as a deputy surveyor of the United States; and thereafter said Howe made and filed what purported to be field notes of a survey of said township, from which a purported official plat of said township was thereafter made, and approved by the surveyor general of the United States for the district of Minnesota, and by the commissioner of the general land office, of which plat Exhibit A, attached to the bill of complainants, is a substantially correct copy. (2) There is no evidence, nor any marks upon the ground, to indicate that any actual survey of said township 57 was ever made by said Howe, as required by his said contract and by the rules and regulations of the general land office, or at all, beyond the running and due marking of the exterior boundary lines of said township, where the section, quarter, and other posts and markings established by him are, and always have been, clear, distinct, and readily found and traced. There is no evidence on the ground that section lines were ever run by him in or across said township, or section corner posts or quarter posts ever located or set by him, except a corner post at the northwest corner of section 36, and a quarter post in the western line of said section 36; and there is no evidence that witness trees were ever blazed or marked by him. (3) Cedar Island Lake is a navigable, deep, and permanent body of water, fed principally by springs, having an area of about 900 acres, instead of about 1,800 acres, as described in the field notes of Howe, and shown on said official plat of said township. Instead of the shores of said lake being low and swampy, as stated in said field notes, the banks are generally high and sloping lands, suitable for agriculture, extending around the lake, and support a good growth of pine and other forest trees, large enough for lumbering, such as will not grow in water. The condition was the same in 1876, and no material part of the land surrounding the lake is accretion. Southerly and westerly of said Cedar Island Lake are five other deep, navigable, and permanent lakes, in the same township, none of which are shown by the field notes of Howe's survey, or upon said government official plat of said township, and all of which have, since the making of said official plat, been sold and patented by the government, as land, according to said plat. (4) There is no evidence

upon the ground that any meander line of said Cedar Island Lake was ever surveyed by said Howe, or any meander posts placed by him about said lake, except one where the north line of said township encounters said lake. And the outlet of said lake is at a different place from that described in said field notes and shown upon said official plat. After the making of the said survey and plat, and before its approval, complaints touching the accuracy thereof were made to the commissioner of the general land office, but on the withdrawal of such complaints the said survey and plat were approved. (5) The land lying between the actual water line of said Cedar Island Lake and the meander line of that lake as delineated on said official plat of said township comprises the land in controversy in this suit, and is the same land directed to be surveyed by the commissioner of the general land office, and referred to in the surveyor's contract, which is attached, as Exhibit A, to the answer in this suit, being therein described as "the public lands situate in Secs. 2, 3, 4, 9, 10, and 11 in township No. 57 N., R. 17 W. of the 4th principal meridian, lying between the old meander boundary of Cedar Island Lake, as given by the original field notes of Henry S. Howe, U. S. deputy surveyor, approved by the surveyor general of Minnesota Aug. 19, 1876, and the shore line of said Cedar Island Lake." (6) Prior to the commencement of this suit the United States has sold, and by its patents has conveyed to the purchasers, according to said official plat made from said Howe survey, all the land in said township 57, as the same appeared upon said plat, to which plat all of said patents expressly refer; it being then and still the only government plat of said township. (7) The complainants are the grantees and owners by mesne conveyances from the patentees of the record title to the following described fractional lots in said township, to wit: Lots 1, 2, and 3 in section 2; lots 1 and 2 in section 3; lots 1 and 8, and portions of lots 3, 5, and 6 in section 4; lots 1, 2, 3, and 4 in section 9; lots 1, 2, 3, and 4 in section 10; and lot 3 in section 11,—being the same lands which are more particularly described in complainants' bill, and each of which fractional lots appear and are represented on said official plat as bounded by and upon said Cedar Island Lake. (8) So far as appears, none of the patentees of said lands had any notice or knowledge of any fraud or misconduct on the part of said Howe in or about the making of said survey and field notes, and all were purchasers in good faith of said lands. (9) Complainants purchased said fractional lots of land of the patentees or their grantees for the pine timber thereon, and the convenience of landing the same in the said Cedar Island Lake, to be driven to the place of manufacture, and before such purchase, in the year 1883, caused said lands to be explored and examined by an experienced timber estimator, who, in making such examination, used, as is customary in such cases, a copy of said official plat of said township which did not have upon it any statement of the acreage or amount of land in any of the subdivisions, and who reported to the complainants his estimate of the amount of pine timber on said lands, and the general character of said land, and the riparian character thereof, as bounded upon said Cedar Island Lake, but did not

discover or report any fraud or error in the survey of said township, or any error or mistake in the said official plat. And the said complainants purchased, paid for, and took conveyances of said lands in good faith, and without any notice or knowledge of any such fraud, error, or mistake. (10) The other permanent lakes in said township, not shown upon such official plat, but appearing thereon as land, and since sold and patented by the government as land according to such official plat, include areas equal to the area of said Cedar Island Lake; and portions of such lakes were purchased by complainants as land, with their other purchases in said township. (11) The survey sought to be restrained in this suit was ordered by the commissioner of the general land office, upon the direction of the secretary of the interior, in a proceeding instituted by certain settlers upon the land in controversy, of which proceedings the complainants had due notice, and in which they appeared.

The case as presented at the final hearing does not differ in any material respect from the showing upon the motion for the preliminary injunction. If that injunction was properly allowed, a decree for permanent injunction should follow. The order granting that injunction was affirmed by the circuit court of appeals, and Judge Riner's very full and clear presentation of the facts and of the law leaves little that can be added. Kirwan v. Murphy, 28 C. C. A. 348, 83 Fed. 275.

In the surveying, platting, offering for sale, and sale, of lands, the government deals as proprietor. The transactions are matters of business; and as between the government and its patentees, or the purchasers from such patentees, all the rules applicable to private ownership and private sales attach, as in the case of an individual vendor. The government, through its agents and employés, makes the surveys and prepares the plats according to which it offers for sale and sells its lands. If its agents and employés are negligent or unfaithful, and loss to the government results, it cannot shift that loss upon an innocent purchaser, who has bought and received title upon the representations of the plats prepared by the government, and according to which the land is offered for sale, and the sales made, and the title to the lands conveyed by patent. The question whether the government, because of the negligence or fraud of its surveyor, has any claim to any part of the land which it has sold and conveyed by patent to the purchaser, is a question which the land department of the government cannot assume to determine. The patent passes the title from the government, and takes the land from the jurisdiction of that department. "With the title passes away all authority or control of the executive department over the land, and over the title which it has conveyed. It would be as reasonable to hold that any private owner of land who has conveyed it to another can, of his own volition, recall, cancel, or annul the instrument which he has made and delivered. If fraud, mistake, error, or wrong has been done, the courts of justice present the only remedy. These courts are as open to the United States to sue for the cancellation of the deed or reconveyance of the land as to individuals, and, if the government is the party injured, this is the proper course."

Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848. It is admitted that all the land in said township has been sold according to said plat, and conveyed to the purchasers by patents referring to said plat. According to the said patents and said plat, to which they all refer, the government has conveyed away the title to every acre of land in respect to which the land department has assumed to order this survey, the effect of which will be to disturb and cast a cloud upon the titles of the purchasers under these patents. It is admitted that as much in area in deep lakes in said town has, in accordance with said plat, been so sold and patented as land, as there is of dry land represented on said plat as covered by Cedar Island Lake, and that part of this deep-lake area was purchased as land by complainants. The government, as against purchasers in good faith, like the complainants, is bound by its own plat, in accordance with which it has sold and conveyed all the land in that township. The purchasers must settle their titles and boundaries between themselves, and the land department has no longer the right to meddle with the land or cast doubt upon the titles so conveyed. The case is unlike the cases of Granger v. Swart, 1 Woolw. 88, Fed. Cas. No. 5,685, and Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. Ed. ——. In those cases the plats and field notes showed that the boundary meander lines were not on the banks or margin of navigable water, but of other low lands, so there was no basis for the claim that the meander line merely indicated a natural boundary, or that any riparian rights existed, as parcel of the land patented. In the case at bar the meander line is shown on the official plat, referred to in the patents, as marking the actual margin or bank of Cedar Island Lake, a navigable body of water, and therefore as including, in the lots so bounded, riparian rights upon that lake. Neither is this case like that of Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68, where the surveyor obviously surveyed the lot in question to a bayou which he mistook for and marked as the Indian river. There the bayou was plain and open to be seen, and fitted, as the meandered boundary, with all the other calls of the survey. The natural water course which was meandered was there, and corresponded with the survey and plat. The surveyor was merely mistaken in the name by which he designated the water course. Here there was no such mistake. There is no body of water which the meander line will fit, except Cedar Island Lake, which is the lake named on the plat.

While these fractional lots bordering on Cedar Island Lake, which complainants purchased of the patentees, are much larger in acreage than is represented on the plat, this alone furnishes no ground to warrant the land department in disregarding the patent, and assuming to take possession of the excess through a resurvey, and selling the same again. In Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. 819, 840, 35 L. Ed. 442, a small fractional lot, of 4½ acres, meandered on a lake, was held to include an unsurveyed point running beyond the meander line and into the lake, containing 25 acres. And a subsequent survey by the land department, and patent to another purchaser of the 25 acres, was held invalid. The court said (page 412, 140 U. S., page 821, 11 Sup. Ct., page 444, 35 L. Ed.):

"We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants to the beds of such lakes, after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than taking from the first grantee a most valuable, and often the most valuable, part of his grant. Plenty of speculators will always be found, as such property increases in value, to enter it and deprive the proper owner of its enjoyment; and to place such persons in possession under a new survey and grant, and put the original grantee of the adjoining property to his action of ejectment and plenary proof of his own title, is a cause of vexatious litigation, which ought not to be created or sanctioned. * * * The official plat made from such survey does not show the meander line, but shows the general form of the lake deduced therefrom, and the surrounding fractional lots adjoining and bordering on the same. The patents, when issued, refer to this plat for identification of the lots conveyed, and are equivalent to, and have the effect of, a declaration that they extend to, and are bounded by, the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow."

See. also, Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428.

In the present case the official plat shows the bank of Cedar Island Lake, a large permanent body of still water, as one of the boundaries of each of the fractional lots here in dispute. This is a natural, unchangeable monument and boundary, to which courses, distances, and quantities must all give way. The purchasers of these fractional lots from the government, and, later, their vendees, the complainants, going upon the ground with a copy of the official map before purchasing, would not find section corners, nor any interior lines in the township; for the evidence shows that nothing of the kind was marked or designated on the ground. The only monument or boundary visible was the bank of Cedar Island Lake; and, with that boundary fixed and plain, they would form their judgments as to the location, character, and value of the land, and as to the value of the timber thereon, which they were purchasing, as well as of the riparian rights belonging to and parcel of the land. The proposal of the land department now is to take summary possession of this very portion of these lands which the patentees and their vendees, the complainants, were able to locate with certainty, from the only fixed and visible boundary, and with reference to the value and desirability of which, including the riparian rights, the purchases were made, and allow the same to be now entered by prowling squatters. If the United States has still any valid claim to any portion of these lands, the title to which they have conveyed away by patent, they should first establish such claim in a court of justice; and, if they can recover any part of any of those lots, it is quite certain that it will not be the part which the land department now proposes to take,—the very part, including riparian rights, which the patentees and complainants were shown by the plat to be the lands which they were purchasing, and which they examined with the view of purchasing, and in fact did purchase and pay for. The evidence shows, as is above stated, that the riparian rights upon this lake were considered by complainants as an important element of value in making

their purchases. As stated by Mr. Justice Mitchell in Lamprey v. State, 52 Minn. 181, 197, 53 N. W. 1142, 18 L. R. A. 677:

"The incalculable mischiefs that would follow if the riparian owner is liable to be cut off from access to the water, and another owner sandwiched in between him and it, whenever the water line had been changed by accretions and relictions, are self-evident, and have frequently been animadverted on by the courts. These considerations apply to riparian ownership on lakes as well as streams. * * * The owners of lands bordering on them have often bought with reference to access to the water, which usually constitutes an important element in the value and desirability of the land. If the rule contended for by the appellants is to prevail, it would simply open the door for prowling speculators to step in and acquire title from the state to any relictions produced in the course of time by the recession of the water, and thus deprive the owner of the original shore estate of all riparian rights, including that of access to the water. The endless litigation over the location of the original water lines, and the grievous practical injustice to the owners of the original riparian estate that would follow, would of themselves be a sufficient reason for refusing to adopt any such doctrine."

The government having sold these fractional lots, and conveyed the title thereto to the purchasers by patents which, by reference to the plat, covered the lands to the banks of Cedar Island Lake, the land department has no jurisdiction or authority to meddle with these lands by making the survey which that department has ordered, and which the defendants were about to make when this suit was begun. If the government has any right or equity to have such patents corrected because of error or mistake, it must apply to a court having jurisdiction for that relief. And in such case, from the showing made in this suit, the title of the complainants to such portions of such lots as border on said lake, as a permanent, visible boundary, will be the least assailable. Decree will be entered as prayed for in the bill, and the form thereof, unless agreed to by counsel, may be settled upon two days' notice.